IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

vs.                                    Case Nos.:   4:12cr11/R/GRJ
                                                    4:13cv10/RH/GRJ

CHRISTOPHER LAMONT SHORTER

---

## <u>ORDER and REPORT AND RECOMMENDATION</u>

This matter is before the court upon Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and supporting memorandum of law. (Docs. 69, 70.)  The Government has filed a response (Doc. 75) and Defendant filed a reply and a sworn declaration.  (Docs. 76, 77.)  Most recently, Defendant filed a motion to amend, in which he indicated his intent to amend his pending motion by forgoing one of his two claims.  (Doc. 82.)  After a careful review of the record and the arguments presented, the Court concludes that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.  *See* Rules Governing Section 2255 Cases 8(a) and (b).

## PROCEDURAL BACKGROUND[1]

Defendant was charged in a 55 count indictment with conspiracy to defraud the United States by filing false claims (tax returns) in violation of 18 U.S.C. § 287 ("Count One"); filing false tax returns in violation of 18 U.S.C. §§ 287 and 2 ("Counts Two through Twenty-Six"); wire fraud in violation of 18 U.S.C. §§ 1343 and 2 ("Counts

---

[1]Detailed statements of facts describing the offense conduct are set forth in the Second Final Presentence Investigation Report (doc. 57) and will be set forth herein only as necessary.

Twenty-Seven through Thirty-Three"); mail fraud in violation of 18 U.S.C. §§ 1341 and 2 ("Counts Thirty-Four through Fifty-One"); aggravated identify theft in violation of18 U.S.C. §§ 1028A(a)(1) and 2  ("Count Fifty-Two through Fifty-Five").  Co-defendant Kimberly Nakia Lewis was charged in all counts except for Counts Fifty-Two through Fifty-Four.  (Doc. 1).  The offense conduct stemmed from Defendant's use of the identities of many other individuals, primarily inmates in the Florida Department of Corrections, to file fraudulent tax returns and obtain refunds from the IRS.  Defendant obtained some of the names and social security numbers of the inmate victims from co-defendant Kimberly Nakia Lewis, who was a former FDOC employee.

Defendant pleaded guilty pursuant to a written plea agreement to Counts One, Two through Fourteen, Twenty-Seven through Thirty-Three, Thirty-Four through Forty-Four, Fifty Two through Fifty Five.  (Docs. 35–37, 73.)  The second final PSR calculated a total offense level of 24 and a criminal history category of VI.  (*See* doc. 58.) Defendant's advisory guidelines range was 100 to 125 months.  The PSR also reflected restitution owing in the amount of $336,509.65.  Defendant was sentenced to a below-guidelines term of 72 months on Counts 1, and 27 through Forty-Four, a concurrent sixty month term on Counts Two through Fourteen and a mandatory consecutive 24 month term on Counts Fifty-Two through Fifty-Five for a total of 96 months.  (Docs. 64, 74).  Co-defendant Lewis pleaded guilty to Counts One, Four, Six, Thirty-Nine, Forty and Fifty-five and was sentenced to a total of 25 months imprisonment, also below the advisory guidelines range.  (Docs. 43, 64.)

In the present motion, Defendant separated his claims into two grounds for relief. His first claim is an allegation of prosecutorial fraud at sentencing, a claim that he later abandons.  (*See* doc. 82.)  His remaining claim is one of ineffective assistance of counsel which contains various interrelated sub-allegations. The Government opposes the motion in its entirety.

## LEGAL ANALYSIS

### General Standard of Review

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n. 8 (11th Cir. 2011).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.  *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d, 1, 8 (11th Cir. 2012).  In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013).  *Strickland's* two part test also applies to guilty pleas.  *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)).  In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir.2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007).  Reviewing courts are to review counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."

*Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at

689); *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000)

(discussing presumption of reasonableness of counsel's conduct); *Lancaster v.

Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not

entitled to error-free representation").  Counsel's performance must be evaluated with a

high degree of deference and without the distorting effects of hindsight.  *Strickland*, 466

U.S. at 689.  To show counsel's performance was unreasonable, a defendant must

establish that "no competent counsel would have taken the action that his counsel did

take."  *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations

omitted); *Chandler*, 218 F.3d at 1315.  When examining the performance of an

experienced trial counsel, the presumption that counsel's conduct was reasonable is

even stronger, because "[e]xperience is due some respect."  *Chandler*, 218 F.3d at

1316 n.18.

   With regard to the prejudice requirement, defendant must establish that, but for

counsel's deficient performance, the outcome of the proceeding would have been

different.  *Strickland*, 466 U.S. at 694.  "The likelihood of a different result must be

substantial, not just conceivable."  *Harrington v. Richter*, 562 U.S. 86, 112 (2011)

(quoting *Strickland*).  For the court to focus merely on "outcome determination,"

however, is insufficient; "[t]o set aside a conviction or sentence solely because the

outcome would have been different but for counsel's error may grant the defendant a

windfall to which the law does not entitle him."  *Lockhart v. Fretwell*, 506 U.S. 364,

369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010).

A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).  Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level.  *Glover v. United States*, 531 U.S. 198, 203–04 (2001).  A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."  *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance.  *Smith v. White,* 815 F.2d 1401, 1406–07 (11th Cir. 1987).  Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.  *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (citing *Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge v. Allison,* 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."  *Chandler*, 218 F.3d at 1313.  This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the

circumstances as defense counsel acted.  Dingle, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3 1177, 1180 (11th Cir. 2000).  "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"  *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief."  *See* 28 U.S.C. § 2255(b); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008).  Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.  *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)).  To be entitled to a hearing, a defendant must allege facts that, if true would prove he is entitled to relief.  *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).  A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.  *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Tejada*, 941 F.2d at 1559; *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted).  Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.  *Lynn*, 365 F.3d at 1239.

### Defendant's Ineffective Assistance of Counsel Claim

Defendant contends counsel's performance was deficient in several interrelated respects.  He contends that counsel was ineffective for failing to familiarize himself with

Case 4:12-cr-00011-RH-GRJ   Document 83   Filed 06/18/15   Page 8 of 15

Page 8 of  15

the facts of Defendant's case and investigate, in order to better aid plea negotiations with the Government, that counsel failed to call a favorable witness to testify on his behalf at sentencing, and that counsel failed to object to and/or appeal the "prosecutorial misconduct" and "fraud upon the court."

Defendant asserts first that had counsel properly familiarized himself with the facts of the case and investigated, counsel would have learned that an individual by the name of Kenneth Bacon was the "mastermind" of the tax fraud scheme giving rise to the offense conduct.  Contrary to Defendant's suggestion, despite the fact that he did not receive a leadership role adjustment, the unobjected to facts in the PSR clearly identify Defendant as having taken the lead in this offense conduct.  (*See* Doc. 58.) Second, Defendant's suggestion that counsel did not know of Mr. Bacon's involvement is unsubstantiated.  Defendant himself informed his attorney of Mr. Bacon's involvement.

Defendant next claims that reasonable counsel would have dedicated at least one hour towards his client's interests by visiting Mr. Bacon at the DOC facility in South Florida where he was housed.  Defendant's assertion that counsel was constitutionally ineffective for his decision not to visit Mr. Bacon in South Florida or not to call Mr. Bacon as a witness is not well founded, as Defendant's own evidence suggests this would have been futile.  Defendant's affidavit reflects Mr. Bacon's reticence to cooperate, and he never indicates that Bacon told him of Bacon's source for the victim-inmate's personal information.  (Doc. 77).  Mr. Bacon's affidavit, submitted in support of Defendant's memorandum is internally inconsistent and hence inconclusive.  (Doc. 70

at 21–23.)[2]  Bacon initially states that he was "very reluctant to come forward and tell what [he] knew as it pertained to his case" despite the fact that Defendant "repeatedly begged [Bacon} to come forward before and after his proffer hearing to tell this information so that it would help him, however [Bacon] did not reveal this information to him until October 2, 2012." (Doc. 70 at 21.)  Thus, according to Bacon, he was unwilling to reveal any information until several months after Defendant's July 26, 2012 sentencing.  Bacon also states that he was unwilling to assist or talk to anyone "until [he] learned of [Defendant's] indictment."  (*Id*.).  The basis for his post-sentencing change of heart—if this is indeed what happened—is not apparent from his affidavit.  In any event, if Bacon's reference to October of 2012 was a typographical error and Bacon actually had revealed the identity of the source of the stolen inmate identities[3] to Defendant before Defendant's sentencing, then Defendant himself possessed the information that counsel would have needed to provide to the Government, and an interview of Bacon would have been unnecessary.  Defendant has not shown that counsel was constitutionally ineffective with respect to his handling of an obviously reluctant, and distant, witness.

---

[2] The Government says in its response that the information provided by Defendant, including information in this affidavit "has not been proven credible."  (Doc. 75 at 16.) Whether this means that any level of inquiry has been done is not clear.

[3] In his affidavit, Bacon claims that a DOC corrections officer by the name of Shaquala Taquana Shaw, with whom Mr. Bacon had an intimate relationship, was the person who provided over 200 inmate names and personal information for use in applying for fraudulent tax refunds.

Defendant also has attached as exhibits to his memorandum, copies of email correspondence between him and his attorney, Mr. Murrell, as well as an email from Mr. Murrell to counsel for the Government.  (Doc. 70 at 19–20.)  This correspondence reflects that Defendant wrote to his attorney on March 30, 2012 requesting that if counsel decided it was beneficial to give the name of Kenneth Bacon to the Government, that Defendant be allowed to try to extract information from Bacon before the Government attempted to talk to him.  (*Id*. at 19.)  Counsel responded via email on April 10, 2012 stating that he was "not sure how interested they are in pursuing this" and noting that, as counsel had previously informed Defendant, he had provided the Government with Bacon's name already.  (*Id*.) This statement is confirmed by an email from Mr. Murrell to the Government dated April 2, 2012 in which Mr. Murrell identified Mr. Bacon as the individual who had given Defendant the names used for the fraudulent tax returns, and conceded that another individual whom Defendant had previously been identified was not the correct person.  (*Id*. at 20.)  Counsel acted reasonably in providing Mr. Bacon's name to the Government.

The Government's lack of interest in pursuing any leads provided by Defendant is well explained by the transcript of the sentencing proceedings.  (Doc. 74.)  The Government said that Defendant "provided truthful information with regards to his co-defendant, Ms. Lewis... [but that] this only accounted for only a small part of Mr. Shorter's scheme."  The Government then stated that "this information was outweighed by his false implication of another correctional officer.  This false information caused the Government to expend a lot of time, effort, and resources trying to determine this other

correctional officer's involvement.  It was finally determined that this person was not involved.  So this was, in fact, a false implication made by Mr. Shorter" which Defendant later admitted.  (Doc. 74 at 10–11, 12, 13.)  The Government went on to note that co-defendant Lewis' involvement had only come at the end of the conspiracy. The Government stated that it did not have information about who was the source of the other identities.  (*Id*. at 11.)  The Government said that it did not pursue any further leads from Defendant because he lacked credibility.  (*Id*. at 12.)  Defense counsel conceded that his client had made a false statement about the identity of the officer from whom he received the names, but said that Defendant ultimately gave the Government the name of the prisoner from whom he obtained the names.  Counsel stated his understanding that "at that point [the Government] decided Mr. Shorter's credibility was not good at all, and they didn't pursue [the lead]." (*Id*. at 13.)  As counsel had noted in his April 10, 2012, email to Defendant, he could not make the Government look into Bacon's involvement and that even if they choose to look into it, counsel had no control as to how they handled it.  (Doc. 70 at 19.)

To the extent Defendant claims that counsel was constitutionally ineffective because he did not object to the Government's decision not to file a 5K1 motion, he cannot show prejudice and is not entitled to relief.  The decision to file a 5K1 motion is a matter of prosecutorial discretion.  *United States v. Nealy*, 232 F.3d 825, 831 (11th Cir. 2000); *United States v. Orozco*, 160 F.3d 1309, 1315 (11th Cir. 1998); *United States v. Forney*, 9 F.3d 1492, 1501 (11th Cir. 1993).  The government has a power, not a duty, to file such a motion when a defendant has substantially assisted.  *Wade v. United*

*States,* 504 U.S. 181, 185 (1992) (analyzing substantial assistance motions under §

5K1.1 and 18 U.S.C. § 3553(e)); *United States v. Dorsey*, 554 F.3d 958, 960–61 (11th

Cir. 2009) (quoting *Forney*, 9 F.3d at 1500);  *see also United States v. McNeese*, 547

F.3d 1307, 1309 (11th Cir. 2008) (applying *Wade* to Rule 35(b) motions).  Even plea

agreements that require the government to consider whether the aid to the prosecution

constitutes substantial assistance do not create a contractual duty to file a 5K1 motion.

*Forney*, 9 F.3d at 1499–1500.  Judicial review of a decision not to file a 5K1 motion is

appropriate only where there is an allegation and substantial showing that the

prosecution refused to file a substantial assistance motion because of a constitutionally

impermissible motivation, such as race or religion.  *Wade*, 504 U.S. at 185–86; *Dorsey*,

554 F.3d at 961; *Nealy*, 232 F.3d at 831.  A defendant who merely claims to have

provided substantial assistance or who makes only generalized allegations of an

improper motive is not entitled to a remedy or even to an evidentiary hearing.  *Wade*,

504 U.S. at 186.   Judicial review is appropriate only "when there is an allegation and a

substantial showing that the prosecution refused to file a substantial assistance motion

because of a constitutionally impermissible motivation."  *Dorsey*, 554 F.3d at 961

(quoting *Forney*, 9 F.3d at 1502).

In this case, not only is there no allegation of a constitutionally impermissible

motivation, there is record evidence that Defendant falsely implicated a person who was

not involved in the conspiracy, and that this falsehood caused the Government to

unnecessarily expend significant time and resources.  Therefore, notwithstanding

Defendant's cooperation with respect to co-defendant Lewis, the Government's

decision not to file a 5K1 motion as a result of the untruthful information he provided
was neither surprising nor constitutionally suspect.

   And despite the false information provided by Defendant the Court, nonetheless,
appeared to give Defendant some credit for the truthful information he provided.  The
Court took this, as well as Defendant's mental health history, into account in fashioning
a below-guidelines sentence.  (Doc. 74 at 24.)

   The final portion of Defendant's ineffective assistance of counsel claim is that
counsel did not object to and/or appeal the "prosecutorial misconduct," which
Defendant characterizes as the Government's purported concealment from the Court of
Defendant's attempts to cooperate.  As discussed above, counsel advised the court
that after his initial untruthfulness, Defendant had provided the name of the inmate from
whom he received the victim inmates' personal identifying information, but the
Government had declined to follow the lead, as it found Defendant to be untruthful.  In
short, there was no "misconduct," and nothing to which to object or to appeal.
Furthermore, there is no indication that Defendant ever requested that counsel appeal
his below guidelines sentence.  *See  Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)
(citing *Rodriguez v. United States*, 395 U.S. 327 (1969).  As such, Defendant has not
shown that counsel's performance was constitutionally ineffective in this respect, and
he is not entitled to relief.

## CONCLUSION

   For all of the foregoing reasons, the court concludes that Defendant has failed to
show that his attorney's performance was constitutionally deficient or that any of

counsel's alleged deficiencies resulted in prejudice to him.  He has not shown that his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 has merit, or that an evidentiary hearing is warranted.  Therefore Defendant's motion should be denied in its entirety.

### Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly it is **ORDERED**:

Defendant's motion to amend, in which he expresses his intent to forego his first claim for relief (Doc. 82) is **GRANTED.**

And based on the foregoing, it is respectfully **RECOMMENDED**:

1.  The motion to vacate, set aside, or correct sentence (Doc. 69) should be

**DENIED**.

2.  A certificate of appealability should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this 18th day of June, 2015.


*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


## NOTICE TO THE PARTIES

    **Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.